UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

| | |
|---|---|
| In Re: | Chapter 7 |
| Gershon Barkany, | Case No. 814-72941-845 |
| Debtor. | |

----------------------------------------------------------X

| | |
|---|---|
| Marc A. Pergament, Interim Chapter 7 Trustee of the Estate of Gershon Barkany, | Adv. Proc. No. |
| Plaintiff, | |
| - against - | |
| Gershon Barkany, | |
| Defendant. | |

----------------------------------------------------------X

## COMPLAINT

### OBJECTING TO DISCHARGE PURSUANT TO
### 11 U.S.C.§§ 727(a)(3), (a)(5), (a)(6) AND (a)(11)

Marc A. Pergament, Chapter 7 Trustee of the Estate of Gershon Barkany ("Trustee" or "Plaintiff"), through counsel Weinberg, Gross & Pergament LLP, files this Complaint Objecting to Discharge Pursuant to 11 U.S.C. §§ 727(a)(3), (a)(5), (a)(6) and (a)(11) (the "Complaint"), stating as follows:

1. This adversary proceeding is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I) and Section 1334.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

3. The statutory predicate for the relief requested herein is § 727 of title 11 of the United States Code. This matter is properly brought as an adversary proceeding under Rule 7001(6) of the Federal Rules of Bankruptcy Procedure.

## PARTIES

4.  Defendant Gershon Barkany ("Barkany") is the Debtor in this bankruptcy case commenced on June 25, 2014 (the "Petition Date"). Barkany may be served with process at 1 Andover Lane, Woodmere, New York 11598.

5.  Plaintiff is the Interim Trustee of this Estate.

## FACTS

6.  Barkany was the mastermind, architect and main perpetrator of a Ponzi scheme which was designed to permanently separate victims from their money. Barkany admitted to his scheme in an affidavit of confession (the "Affidavit of Confession") sworn on August 1, 2011 in which he described the means he employed to defraud victims of tens of millions of dollars.

7.  On March 25, 2013, a judgment was entered (the "Judgment") in the Supreme Court, County of Queens, Index No. 5619/2013, in favor of certain victims and against Barkany and legal entities established by, owned by and/or controlled by him in the sum of $66,609,424.74.

8.  On March 27, 2013, Barkany was arrested by agents from the Federal Bureau of Investigation. On June 25, 2013 he was charged with one criminal count of wire fraud, with allegations that closely track Barkany's statements in the Affidavit of Confession. On June 26, 2013, Barkany pleaded guilty in the United States District Court for the Eastern District of New York to wire fraud in connection with his Ponzi scheme. In connection with the tender of his guilty plea, Barkany admitted to the fraud described in the Affidavit of Confession and the Information. Barkany is awaiting sentencing.

9. Barkany utilized a variety of means in this fraud, including the solicitation of real estate and loan transactions which, unbeknownst to the victims, were not remotely as represented or were altogether non-existent.

10. Some of the transactions involved loans by various of the victims directly to Barkany or to entities established by, owned by and/or controlled by him. Barkany also solicited investors to participate in various real estate transactions involving commercial or residential properties.

11. The loans and real estate transactions were pure shams, fabricated to serve as a vehicle to separate his victims from their money. Often, Barkany took documents from legitimate transactions, doctored them by changing the names, properties and other information and presented them to victims for use in a totally fictitious transaction. On other occasions, Barkany would find documents or obtain them from law firms under false pretenses and use them to create illusions of real, legitimate transactions.

12. In a typical transaction, the unaware victim agreed to make a loan to, or a deposit for the benefit of, Barkany, a designated Barkany Entity, or a "borrower" designated by Barkany for a specified period of time. In connection with these transactions, the unaware victims would pay Barkany or one of his entities directly or at Barkany's direction would make wire transfers to attorney escrow accounts maintained by law firms Barkany used for many of his transactions, both real and sham. At the end of the "investment" or "loan" term, Barkany or the Barkany Entity was to return the principal, accrued interest, and any additional amounts depending upon the terms agreed upon.

13. From time to time Barkany would have checks issued to his victims as full or partial distribution of principal, interest and/or other amounts. Barkany's victims would, in turn, often redeposit or roll over these amounts for Barkany's benefit based on Barkany's false

reports of successful results. Barkany then used these funds and new monies to make payments to other victims, thus encouraging them to remain in Barkany's fold. And from the money his victims provided to him, Barkany paid millions of dollars to himself and to other persons, made millions of dollars of "donations" to charities and lost millions of dollars gambling at casinos, all to perpetuate his image as a highly successful deal-maker.

14. For a time, Barkany was able to keep the fraud going by using funds accrued from new "investments" and "loans" to make interest and other payments on pre-existing transactions. However, in late 2010, Barkany was caught in one too many lies and was no longer able to meet his obligations to cover pre-existing transactions. As the depletion of liquid assets accelerated, Barkany's fraudulent Ponzi scheme collapsed.

### FIRST CLAIM FOR RELIEF
### DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(3)

15. Paragraphs 1 through 14 are incorporated by reference as if fully set forth herein.

16. Pursuant to 11 U.S.C. § 727(a)(3), the Court shall not grant the debtor a discharge where "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

17. Barkany has acknowledged that during 2011 and 2012 he kept records of his financial transactions on one or more computers that were in his custody, possession and control and that such computers are no longer in his custody, possession and control. He has offered no explanation for the loss of his computers. Thus, he has failed without justification to

keep or preserve recorded information from which his financial condition or business transactions might be ascertained and should not be granted a discharge.

### SECOND CLAIM FOR RELIEF
### DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(5)

18. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

19. Pursuant to 11 U.S.C. § 727(a)(5), the Court shall not grant the debtor a discharge where "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

20. Although Barkany executed the Affidavit of Confession, pleaded guilty to criminal charges brought against him, delivered certain incomplete financial records and conveyed certain assets to or for the benefit of his victims, tens of millions of dollars remain missing. Barkany has failed to account fully for the money he stole from his victims as well as the money he is alleged to have stolen in a subsequent scheme which is also included within the scope of his guilty plea and he has failed to account for all assets he may have acquired with the stolen money. Thus, he should not be granted a discharge.

### THIRD CLAIM FOR RELIEF
### DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(6)

21. Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

22. Pursuant to 11 U.S.C. § 727(a)(6), the Court shall not grant the debtor a discharge where "the debtor has refused, in the case - (a) to obey any lawful order of the court, other than an order to respond to a material question or to testify."

23. On February 4, 2015, the Clerk of the Bankruptcy Court issued a Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines, setting a meeting of creditors for March 11, 2015. (ECF No. 127.) The notice provides that the debtor must be present at the meeting to be questioned under oath by the trustee and by creditors and that the meeting may be continued and concluded at a later date specified in a notice filed with the court. The record indicates that the notice was sent by first class mail to Barkany at his residence and by email to his counsel. (ECF No. 136.)

24. On March 11, 2015, the meeting of creditors was commenced. Before any examination of the debtor or any other business of the meeting of creditors was conducted, the Assistant U.S. Trustee adjourned the meeting of creditors to April 22, 2015, and a notice of the adjournment was subsequently filed and serviced. (ECF No. 155.)

25. The meeting of creditors continued on April 22, 2015. Barkany did not appear at the meeting, although his counsel was present.

26. Barkany had notice of but failed without justification to appear and be examined at the § 341(a) meeting of creditors held on April 22, 2015. A debtor's failure to attend a § 341(a) meeting without justification amounts to a failure to abide by an order of the court (*See In re Pappalardo*, 109 B.R. 622, 625 (Bakr. S.D.N.Y. 1990).) Thus, Barkany should not be granted a discharge.

### FOURTH CLAIM FOR RELIEF
### DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(11)

27. Paragraphs 1 though 26 are incorporated by reference as if fully set forth herein.

28. Pursuant to 11 U.S.C. § 727(a)(11), the Court shall not grant the debtor a discharge where "the debtor failed to complete an instructional course concerning personal financial management described in section 111."

29. There is no Official Form 23 - Debtor's Certification of Completion of Postpetition Instructional Course Concerning Personal Financial Management executed by Barkany, nor any other document executed by Barkany containing the certification in Official Form 23, in the record of the above-styled bankruptcy case. On information and belief, Barkany has not completed an instruction course concerning personal financial management. Thus, he should not be granted a discharge.

## PRAYER FOR RELIEF

WHEREFOR, Plaintiff prays, that, after due proceedings are had, the Court enter judgment: (I) Declaring that Gershon Barkany is denied discharge; (ii) granting such other and further relief to which Plaintiff may be entitled in law or equity; and (iii) awarding Plaintiff all costs of this proceeding.

Dated: Garden City, New York
      September 30, 2015

                                      Weinberg, Gross & Pergament LLP
                                      Attorneys for Plaintiff-Trustee

By: _____
                                      Marc A. Pergament
                                      400 Garden City Plaza, Suite 403
                                      Garden City, New York 11530
                                      (516) 877-2424